IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2025 Session

## JONTAE A. FISCHIETTIE v. ECONO AUTO PAINTING OF WEST TENNESSEE, INC.

Appeal from the Circuit Court for Shelby County
No. CT-4258-23     Damita J. Dandridge, Judge

———————————————————

No. W2025-00228-COA-R3-CV

———————————————————

Appellant brought this action after his car was painted the wrong color. During the course of the proceedings, the trial court ordered the parties to submit to mediation subject to certain guidelines requiring good faith participation, denied Appellant's motion to recuse, granted Appellees' motion for partial summary judgment as to Appellant's claim for punitive damages, and ultimately granted Appellees' motion to confess judgment as to Appellant's claims for breach of contract and negligence. Appellant appeals each of these rulings. We reverse the trial court's ruling as to Appellees' motion to confess judgment, but affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CARMA DENNIS MCGEE, and VALERIE L. SMITH, JJ., joined.

Jontae A. Fischiettie, Millington, Tennessee, Pro se.

Richard Glassman and James F. Horner, Jr., Memphis, Tennessee, for the appellees, David Farmer, and Econo Auto Painting of West Tennessee, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellant Jontae A. Fischiettie (Appellant) filed a complaint against Defendants/Appellees Econo Auto Painting of West Tennessee, Inc. ("Econo") and David

Farmer (together, "Appellees") in the Shelby County Circuit Court ("the trial court") on October 12, 2023. Appellant alleged that the parties had entered into a contract on January 23, 2023, under which Appellant would pay $555.34 to have his car painted. The complaint stated that the parties' contract was for the vehicle to be painted a dark green and for the attached roof rack to be left its original color. After leaving the vehicle with Appellees for three days, Appellant returned to find both it and the roof rack to have been painted silver. Appellant alleged that he left the vehicle with Appellees for an additional four days to have the error corrected, only for the second painting to have been done incorrectly such that the silver bled through and the green appeared "blotchy and spotted."

Appellant asserted that he was "subjected to public humiliation, stress, anxiety attacks and embarrassment for a period of (7) Months[,]" due to the "blotchy condition" of his vehicle's paint.[1] He had also been "compelled to seek rides, engage in hired ride shares to maintain appointments, as well [as] undergo an increase in his anxiety medication to battle the massive anxiety attack in dealing with [Appellees]." The complaint raised claims for breach of contract, negligence, intentional and negligent infliction of mental and emotional distress, vicarious liability, and failure to supervise. Appellant sought $750,000.00 per defendant in compensatory damages[2] and a total of $33.9 million in punitive damages. Appellant also included a demand for a jury trial.

Less than thirty days after filing his complaint, Appellant filed a motion for summary judgment on all of his claims on October 24, 2023.

Appellees answered the complaint in November 2023, denying Appellant's entitlement to relief. Appellees raised several affirmative defenses, including failure to mitigate damages and failure to state a claim upon which relief can be granted. Appellees also opposed Appellant's motion for summary judgment.[3] Appellees requested that the summary judgment proceedings be stayed pending the completion of discovery.

On January 24, 2024, Appellees moved to compel the parties' participation in alternative dispute resolution. Appellant opposed the request for mediation as unlikely to yield any positive result.

---

[1] There has been no allegation at any point in this case that Appellant's vehicle was rendered inoperable or lost some mechanical functionality by Appellees' actions.

[2] Appellant alleged that these damages included the "cost of repairing the damaged car, having it repainted, diminished value of the car, expenses associated with returning the vehicle for repeated repairs, loss of use, cost of court, filing fees, process server fees[;] [m]oreover, locating a secondary shop, to correct and paint the car correctly with the correct color."

[3] Appellees later supplemented their response to Appellant's motion for summary judgment, arguing that he could not recover non-economic damages arising out of claims for loss of or damage to property. Appellees also argued that Mr. Farmer could not be held personally liable for the acts of the business.

By order of March 12, 2024, the trial court entered a scheduling order setting various discovery deadlines. The order also directed the parties to engage in meditation prior to September 1, 2024. The order was signed by Appellant. Then on March 15, 2024, Appellant filed a motion to be relieved from the mediation obligation.

Appellant filed a motion to exclude expert testimony in April 2024. He argued that the subject matter of his claims was not complex and could be understood by laypersons without the need for expert testimony. Included with this motion was an estimate for the repainting of Appellant's vehicle provided by Maaco Collision Repair & Auto Painting ("Maaco") in the amount of $6,766.64.

The trial court granted Appellees' motion to compel mediation by order of May 8, 2024. The trial court directed the parties to submit to a Rule 31 mediation with retired Judge Jerry Stokes or retired Justice Janice M. Holder.

Then on June 14, 2024, Appellees filed a motion to compel Appellant to mediate in good faith within guidelines to be set by the court. Therein, Appellees alleged that a mediation date had been set with Justice Holder, but Appellant had attempted to unilaterally terminate her services based on his dissatisfaction with her retainer requirements. Appellees argued that Appellant should again be compelled to take part in mediation subject to certain guidelines to ensure his participation would be in good faith and that no additional conflict related to the cost of mediation would arise. Among the requested accommodations, Appellees sought to have Justice Holder offer her opinion to the trial court as to whether Appellant had mediated in good faith. Appellant opposed the motion, particularly the request to have Justice Holder opine as to his intentions.

The trial court granted Appellees' motion to compel mediation in good faith by order of July 3, 2024, including each of the guidelines suggested by Appellees.[4]

---

[4] Specifically, the order directed that

(1) the parties reschedule mediation with Justice Holder, (2) [Appellant] is compelled to abide by the Mediation Agreement and rules set by Court appointed mediator Justice Holder with respect to the mediation, (3) [Appellant] is compelled to participate in good faith in the mediation process, (4) [Appellant] is compelled to stay for the entire duration of the Mediation session, until a resolution is reached or the mediator declares an impasse, (5) [Appellant] is compelled to refrain from threatening the Court appointed Mediator Justice Holder, [Appellees], and [Appellees'] counsel with litigation or bar complaints, (6) that the mediation agreement was not breached, despite [Appellant's] contentions to the contrary, and (7) that Justice Holder is to provide a report to the Court for *in camera* inspection as to whether she believes [Appellant] participated in the mediation in good faith.

The trial court further directed: "Failure to comply with this Order may result in sanctions, contempt proceedings, and/or dismissal as the Court sees fit."

However, Appellees moved to relieve Justice Holder from her appointment as mediator on July 23, 2024. Appellees alleged that Justice Holder had requested to be relieved as mediator after expressing concern that Appellant's earlier dissatisfaction would leave any future mediation unlikely to be successful. Appellees sought to have Judge Stokes appointed in her stead. Appellant again opposed the motion, arguing that the guidelines contained in the trial court's July 3, 2024 order violated Rule 31. Appellant then filed a second motion requesting to be relieved from the court-ordered mediation.

The trial court granted Appellees' motion to relieve Justice Holder as mediator by order of August 2, 2024. By separate order, the trial court denied Appellant's motion to be relieved from mediation. The trial court directed the parties to participate in mediation with Judge Stokes, or else, inter alia, retired Judge Bernice Donald, subject to the guidelines set out in the July 3, 2024 order.

But then on September 19, 2024, Appellees moved to refer the case for a Rule 31A judicial settlement conference. Appellees alleged that Judge Donald had rescinded her initial agreement to serve as mediator following several emails from Appellant rejecting her mediation contract. Alleging that Appellant's actions had caused two mediators to refuse to hear the case, Appellees requested that the matter be scheduled for a judicial settlement conference. Appellant opposed the motion, arguing that it was the inclusion of Appellees' requested guidelines in violation of Rule 31 that had derailed the two mediation attempts. Appellant further argued that presenting the case in a settlement conference would not be successful and would violate his right to a jury trial.

The trial court granted Appellees' motion by order of October 4, 2024. The trial court directed the parties to attend a judicial settlement conference with a judicial officer to be selected by the court and to "participate in good faith[.]" The trial court further ordered that Appellant's deposition would continue as scheduled and that at the deposition, Appellant would execute a release allowing Appellees to access his federal or state tax returns for 2020 through 2024, as relevant to his "lost wage and/or loss of use claims[.]" Again the trial court stated that "violation of or failure to comply with this Order will result in civil contempt and/or such other sanctions as the Court finds appropriate."

Appellant then filed a motion for a protective order on October 7, 2024, asserting that only his 2023 tax records were relevant to the case and seeking to limit the trial court's order requiring his release of the remaining records. Appellant also asked to produce the documents for in camera review and redaction before releasing the information to Appellees.

The next day, Appellant filed a withdrawal of his loss of use, emotional distress, and mental anguish claims. The notice indicated that his breach of contract, vicarious liability, and punitive damages claims remained.

Shortly thereafter, Appellees sought partial summary judgment as to Appellant's claim for punitive damages. Appellees argued that the allegations against them involved simple negligence rather than the egregious conduct required to support punitive damages. Appellees further argued that the deadlines for fact witness depositions and expert witness designation had passed, and that Appellant had failed to offer any proof that their conduct stemmed from recklessness, fraud, intent, or malice.[5]

On October 30, 2024, Appellees filed a "Motion to Confess Judgment." They asserted that with the withdrawal of Appellant's loss of use, emotional distress, and mental anguish claims, the proper measure of compensatory damages was only the reasonable cost of repairing and repainting Appellant's vehicle. Appellees argued that Appellant had admitted in his deposition that the $6,766.64 estimate provided by Maaco was the total cost to repair the vehicle and that the time for obtaining expert valuation testimony had expired. Thus, Appellees admitted for purposes of their motion that Econo had "breached its contract with [Appellant] by negligently painting the vehicle the wrong color and below the applicable standard of care and that for purposes of this Motion [Appellant] is entitled to an award of damages against Econo in the amount of up to $6,766.64 based upon the [] estimate secured and produced by [Appellant] in discovery." As the judgment Appellees sought to confess "would give [Appellant] all that he is potentially entitled to under Tennessee law[,]" Appellees asserted that "upon confession of judgment by [Appellees] and payment of said confessed judgment into the court clerk in satisfaction of said judgment [Appellant's] case should be dismissed with prejudice as there are no issues left to try."

Appellant filed a motion to recuse the trial court judge on November 4, 2024. Appellant alleged that the trial court's July 3, 2024 order requiring the parties to undergo mediation subject to guidelines requiring good faith participation violated Rule 31 of the Rules of the Tennessee Supreme Court. Although Appellant took issue with each of the guidelines included in the trial court's order, he was particularly troubled by the directive seeking the mediator's opinion as to whether Appellant had participated in good faith, arguing that "Rule 31['s] sole purpose is to be private and confidential, absent the 'eyes of the court'" such that "submitting reports, absent permission of the parties, violate[s] the very foundation to [mediation]. And corrode[s] the trust in government, Judges, the Court and legal system." Appellant argued that entering the order in violation of Rule 31 "**cast[] an appearance of bias and prejudice** against [Appellant] and show[ed] favoritism to [Appellees]." Appellant further asserted that the trial court had "not granted one of [Appellant's] Motions and [all] of [Appellees'] Motions[.]"

Appellant also filed an objection to Appellees' motion to confess judgment on

---

[5] Appellees later incorporated their motion for partial summary judgment into their supplemental response to Appellant's own October 2023 motion for summary judgment.

November 4, 2024. Citing to Tennessee Code Annotated sections 40-24-103[6] and 25-2-101,[7] Appellant argued that a confession of judgment was not appropriate as his claims did not involve the imposition of fines in a criminal matter but the award of civil damages, and particularly damages that remained in dispute. Appellant argued that he was entitled to the cost of having his vehicle repainted as confessed by Appellees, and also "the totals for the car replacement, estimates and cost for rentals, moreover, [Appellant's] client's cancellations." Appellant included a chart totaling his compensatory and punitive damages at $113,433.71. Appellant further asserted that he did not accept the confession of judgment and that he had a constitutional right for his claims to be settled via a jury trial.

On the same day, Appellant filed an objection to Appellees' motion for partial summary judgment as to his punitive damages claim. Appellant asserted that summary judgment was not proper in light of his demand for a jury trial. Appellant argued that he had sufficiently established that Appellees' conduct was reckless and that a dispute remained as to the amount of punitive damages he would be entitled to after the matter was presented to a jury.

Then on November 8, 2024, Appellant filed a notice of the renewal of his loss of use claim. Appellant included a chart totaling his loss of use damages at $36,855.00. As part of the notice, Appellant revoked the release of his tax records included as part of the trial court's October 4, 2024 order.

Appellant filed his own motion to confess judgment on November 18, 2024, seeking a judgment in his favor on his breach of contract, negligence, loss of use, and vicarious liability claims, and "any other of [his] claims, that remain before the court[,]" in the amount of $60,288.71 plus costs.[8] Appellant renewed his motion to confess judgment on December 4, 2024, seeking $90,822.49 plus costs.[9] Appellant then filed a motion for directed verdict on January 21, 2025, seeking $67,314.71 in damages.[10]

---

[6] This section provides that: "In cases where a fine is assessed, the court shall allow the defendant to confess judgment for the fine and costs, with good sureties." Tenn. Code Ann. § 40-24-103.

[7] This section provides that:

(a) Any power of attorney or authority to confess judgment which is given before an action is instituted and before the service of process in such action, is declared void; and any judgment based on such power of attorney or authority is likewise declared void.
(b) This section shall not affect any power of attorney or authority given after an action is instituted and after the service of process in such action.

Tenn. Code Ann. § 25-2-101.

[8] This amount included $23,433.71 for breach of contract and $36,855.00 for loss of use.

[9] The increased amount reflected the additional days of lost use since the previous filing.

[10] This amount included $59,164.07 for loss of use, $1,384.00 in court costs, and $6,766.64 in repairs.

Appellees opposed each of Appellant's motions. Appellees also moved to exclude or limit Appellant's loss of use evidence based on Appellant's admitted failure to repair his vehicle by having it repainted.

Eventually, on February 5, 2025, the trial court denied Appellant's recusal motion. The trial court found that the sole ground for recusal alleged by Appellant was the entry of the July 3, 2024 order establishing guidelines for the court-ordered mediation. The trial court found that entry of this order did not amount to actual or perceived bias. Alternatively, the trial court found that the delay of almost four months between entry of the order and Appellant's motion to recuse was unreasonable and rendered the motion untimely.

Also on February 5, 2025, the trial court granted Appellees' motion for partial summary judgment as to Appellant's punitive damages claim. The trial court found such a motion to be the proper method of challenging a claim for punitive damages. The trial court further found that Appellant had failed to present clear and convincing evidence that Appellees' conduct involved the recklessness, fraud, intent, or malice required to establish his entitlement to punitive damages.

By separate order of February 5, 2025, the trial court granted Appellees' motion to confess judgment. The trial court ordered that upon payment of $6,766.64 plus court costs, the confessed judgment "shall be deemed satisfied and [Appellant's] case in its entirety dismissed with prejudice." Finally, the trial court ruled that all remaining motions still pending were rendered moot by the entry of the confessed judgment, determined there was no just reason for delay, and certified the order as final for purposes of Rule 54.02 of the Tennessee Rules of Civil Procedure.

Appellees filed a notice of satisfaction of the confessed judgment on February 6, 2025, based on their payment of $6,766.64 into the court clerk. This appeal followed.

## II. ISSUES PRESENTED

Appellant lists twenty issues in his brief. From our review, these issues may be consolidated into the following:

1. Whether the trial court erred in granting Appellees' motion to compel Appellant to participate in mediation subject to certain guidelines.
2. Whether the trial court erred in denying Appellant's motion to recuse.
3. Whether the trial court erred in granting Appellees' motion for summary judgment as to Appellant's punitive damages claim.
4. Whether the trial court erred in granting Appellees' motion to confess judgment in the amount of $6,766.64.

Appellees raise two additional issues:

1. Whether Appellant's appeal should be dismissed for failure to comply with appellate briefing requirements.
2. Whether Appellant's appeal is frivolous, entitling Appellees to an award of damages pursuant to Tennessee Code Annotated section 17-1-122.

## III. ANALYSIS

### A. Sufficiency of the Brief

Appellees argue that Appellant's failure to comply with the guidelines for appellate briefing in Rule 27 of the Tennessee Rules of Appellate Procedure[11] and Rule 6 of the Rules of the Court of Appeals of Tennessee[12] should result in the waiver of this appeal. We agree that Appellant's brief falls somewhat short of these requirements. Although Appellant makes an effort to include citations to the record throughout his brief, these references are to the date the cited document was filed, rather than to the page in the record where the document can be found. *See* Tenn. R. App. P. 27(g) (providing that "reference in the briefs to the record shall be to the pages of the record involved"). And as Appellees

---

[11] As relevant, Rule 27 provides that the brief of an appellant shall contain the following:

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record [and]
(7) An argument, which may be preceded by a summary of argument, setting forth:
    (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
    (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a).

[12] Rule 6 requires the following, "in regard to each issue on appeal":

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous or corrective action is recorded.
(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Tenn. R. Ct. App. 6(a).

note, the structure and organization of Appellant's brief leaves quite a bit to be desired.[13]

Appellant's decision to represent himself in this appeal does not excuse him from the briefing requirements of this Court. "The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). However, it is well settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, '[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts.'" *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (first citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); and then quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). And "[p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." *Id.* (citing *Hodges*, 43 S.W.3d at 920–21); *see also Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) ("*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.").

We note, however, that our decisions to waive a party's argument for failure to comply with the briefing requirements "usually involve egregious errors that prejudice the opposing party, force the court to act as a party's counsel, or otherwise significantly frustrate the court's ability to decide an appeal." *DiNovo v. Binkley*, 706 S.W.3d 334, 337 (Tenn. 2025) (per curiam). Thus, rather than waive Appellant's argument *in toto* and dismiss this appeal, we will consider each of the issues raised by Appellant to determine whether he has drafted a sufficient argument such that appellate review is feasible. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Jan. 24, 2013) (noting that, despite deficiencies in the record, we are sometimes able to "soldier on" to review a case upon its merits, where the issues are sufficiently clear).

### B. Mediation Guidelines

We turn first to Appellant's argument regarding the propriety of the trial court's July 3, 2024 order directing the parties to participate in mediation in good faith, subject to certain guidelines. Appellant argues that the guidelines within the order violated Rule 31 of the Tennessee Rules of the Supreme Court, primarily by compelling Appellant to stay for the duration of the mediation, allowing the mediator to opine as to whether Appellant participated in good faith, and allowing for sanctions in the event of Appellant's non-compliance with the order.

---

[13] On this point, Appellees emphasize the likeness of Appellant's brief in this case to that of the appellant in the recent case of *Tatum v. Tatum*, No. E2024-00655-COA-R3-CV, 2025 WL 465496 (Tenn. Ct. App. Feb. 11, 2025), *perm. app. denied* (June 18, 2025). However, that case is a memorandum opinion and may not be cited. *Id.* at *1.

However, the record is clear that the parties never attended mediation. Nor was this failure to participate, in good faith or otherwise, met with any sanctions from the trial court. As such, the guidelines set out by the trial court were never enforced, and there is no relief that this Court can offer to Appellant. *See Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 175 (Tenn. Ct. App. 2009) ("[A] case will generally be considered moot when the prevailing party will be provided no meaningful relief from a judgment in its favor." (quoting *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996))); *see also* Tenn. R. App. P. 36(b) ("A final judgment . . . shall not be set aside unless . . . error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). The alleged violation of Rule 31 is therefore, at most, harmless error.

### C. Recusal

Appellant also questions the trial court's denial of his motion for recusal. Appeals following a motion to recuse are governed by Rule 10B of the Rules of the Supreme Court of the State of Tennessee. The standard of review for a Rule 10B appeal is de novo, with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. Tennessee Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup. Ct. 10, § 2.11. Thus, even in cases where a judge sincerely believes that he or she can preside over a matter fairly and impartially, recusal is nevertheless required when a reasonable person "in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

Still, not every bias, partiality, or prejudice requires recusal: "To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Alley*, 882 S.W.2d at 821 (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. 1990)). Additionally, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Alley*, 882 S.W.2d at 821; *see also McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *4 (Tenn. Ct. App. Feb.11, 2014) ("Because the protections against bias are generally specific to an individual judge, and arise from a personal situation and a source outside the lawsuit, rulings made during a lawsuit are not enough to require recusal."). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008) (quoting *Alley*, 882 S.W.2d at 821) (finding no error in the trial court denying the defendant's motion to recuse, even after concluding that the trial court committed multiple reversible errors, because there was no proof that the errors resulted from bias or prejudice against the defendant). If this were not the case, "recusal would be required as a

- 10 -

matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." ***Davis***, 38 S.W.3d at 565.

In his November 4, 2024 motion to recuse the trial court judge, Appellant focused solely on the trial court's entry of the July 3, 2024 order containing the guidelines for the parties' participation in mediation. The trial court found that Appellant's motion was untimely, noting that the delay of four months did not comply with Rule 10B's requirement that such motions must be "filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." Tenn. R. Sup. Ct. 10B, §1.01. We agree that this delay amounts to a waiver of Appellant's claim of judicial bias. *See, e.g.*, ***Killian v. Moore***, No. M2020-01283-COA-R3-CV, 2022 WL 457395, at *15 (Tenn. Ct. App. Feb. 15, 2022) (finding a recusal motion was not promptly filed when it came "four months after the court entered its final order and therefore long beyond the time Mother would have been made aware of the facts which she contends provide a basis for recusal"); ***Xingkui Guo v. Rogers***, No. M2020-01321-COA-T10B-CV, 2020 WL 6781244, at *3 (Tenn. Ct. App. Nov. 18, 2020) (concluding that the "delay of more than four months between the trial court's ruling on the motion for sanctions and the filing of [the] motion for recusal was neither prompt nor timely"); ***Odom v. Odom***, No. M2018-00405-COA-R3-CV, 2019 WL 3546437, at *3 (Tenn. Ct. App. Aug. 5, 2019) (concluding that the appellant did not promptly seek redress based on her experience at a hearing when she "waited four months to seek recusal" and continued to participate in the proceedings in the meantime).

Moreover, as discussed, *supra*, the directives in that order amount to, at most, harmless error. Appellant has not presented anything to suggest that entry of the mediation order, or any of the other orders by which the trial court had "not granted one of [Appellant's] Motions and [all] of [Appellees'] Motions[,]" show a bias necessitating disqualification: "Consistent adverse rulings may lead a party to wish for another trial judge, . . . they do not provide a basis for requiring the trial judge's recusal from the case." ***In re Samuel P.***, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (citing ***Runyon v. Runyon***, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *10 (Tenn. Ct. App. Mar. 31, 2014)); *see also **Cannon***, 254 S.W.3d at 308. Nor has Appellant made any argument that the purported bias shown in the trial court's conduct stems from an extrajudicial source. *See **Alley***, 882 S.W.2d at 821. Without more, Appellant has simply not met his burden to establish that "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." ***Bean v. Bailey***, 280 S.W.3d 798, 805 (Tenn. 2009).[14] Because Appellant has failed to establish that the trial court has a personal bias or

---

[14] Appellant further asserts that the trial court judge erred in ruling on the very motion seeking to disqualify her from the case, rather than having another judge adjudicate the motion. However, Appellant offers no legal authority to support his assertion that this was improper. *See **Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). We conclude

prejudice or that the trial court's impartiality may reasonably be questioned, we affirm the trial court's denial of Appellant's motion to recuse.

## D. Summary Judgment

We look next to the trial court's decision to grant Appellees' motion for partial summary judgment as to Appellant's claim for punitive damages. Appellant's argument on this issue is wholly focused on the trial court's ability to address his claim for punitive damages prior to the presentation to a jury of his underlying claims for compensatory damages. Relying on Tennessee Code Annotated section 29-39-104[15] and Tennessee Rule of Civil Procedure 42.02,[16] Appellant seems to contend that the trial court improperly bifurcated his case by allowing Appellees to contest his punitive damages claim before his substantive claims were heard by a jury. However, this Court has repeatedly acknowledged that "[a] motion for partial summary judgment is an appropriate way to challenge a claim for punitive damages." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 193 (Tenn. Ct. App. 2008) (citations omitted); *see also* *Evans v. Piedmont Nat. Gas Co.*, No. M2014-01099-COA-R3-CV, 2015 WL 9946268, at *8 (Tenn. Ct. App. Aug. 18, 2015) (citing *Duran*); *Malone v. Assocs. Com. Corp.*, No. E2000-00220-COA-R3-CV, 2000 WL 486754, at *1 (Tenn. Ct. App. Apr. 26, 2000) ("The sole issue on appeal is whether defendant was entitled to summary judgment on the issue of punitive damages.").

And despite Appellant's contentions otherwise, a plaintiff's constitutional right to a jury trial is not violated by the entry of summary judgment for the defendant. *See* *Martin v. Norfolk Southern Ry.*, No. E2006-01021-COA-R3-CV, 2007 WL 1958644, at *8 (Tenn. Ct. App. July 6, 2007) (Susano, J., dissenting) (observing that it is a "bedrock principle" that "a party's jury demand and its right to pursue its alleged cause of action can be legitimately thwarted if the party sued can demonstrate, under the rubric of Tenn. R. Civ. P. 56, that it is entitled to summary judgment. Hence, if the material facts pertaining to a

---

that this issue has been waived.

[15] As relevant, this section provides that when a "claimant seeks an award of punitive damages, the trier of fact in a bifurcated proceeding shall first determine whether compensatory damages are to be awarded and in what amount and by special verdict whether each defendant's conduct was malicious, intentional, fraudulent or reckless and whether [certain limitations] appl[y]." Tenn. Code Ann. § 29-39-104(a)(2). The section further provides that: "If a jury finds that a defendant engaged in malicious, intentional, fraudulent, or reckless conduct, then the court shall promptly commence an evidentiary hearing in which the jury shall determine the amount of punitive damages, if any[.]" Tenn Code Ann. § 29-39-104(a)(3).

[16] Rule 42.02 provides:

The court for convenience or to avoid prejudice may in jury trials order a separate trial of any one or more claims, cross-claims, counterclaims, or third-party claims, or issues on which a jury trial has been waived by all parties. For the same purposes the Court may, in nonjury trials, order a separate trial of any one or more claims, cross-claims, counterclaims, third-party claims, or issues.

defense are not in dispute and if those facts show conclusively that the defendant is entitled to a judgment, the plaintiff loses its constitutional right to a jury trial, its case is over, and the defendant goes away with summary judgment"), *rev'd on other grounds*, 271 S.W.3d 76 (Tenn. 2008); *see also* **Hannan v. Alltel Publg. Co.**, 270 S.W.3d 1, 17, n.14 (Tenn. 2008) (Koch, J., dissenting) (explaining that the question of whether "properly made and supported summary judgment motions [are] somehow interfering with the litigants' constitutionally protected right to a jury trial[,]" "must certainly be answered in the negative" (citing **State v. Malady**, 952 S.W.2d 440, 443 (Tenn. Crim. App. 1996); **Union Planters Nat'l Bank of Memphis v. Inman**, 588 S.W.2d 757, 760 (Tenn. Ct. App.1979))), *overruled on other grounds by* **Rye v. Women's Care Ctr. of Memphis, MPLLC**, 477 S.W.3d 235 (Tenn. 2015). This argument is, respectfully, without merit.

Although Appellees address the ruling in some depth, seemingly in an abundance of caution, Appellant's brief does not offer any argument regarding the merits of Appellees motion for partial summary judgment. *See* **McNeill v. Blount Mem'l Hosp. Inc.**, No. E2022-00209-COA-R3-CV, 2022 WL 16955177, at *7 (Tenn. Ct. App. Nov. 16, 2022) (holding that an argument was subject to waiver when the appellant's "brief contain[ed] no argument that addresse[d] the actual basis for the trial court's grant of summary judgment"); **Payne v. Bradley**, No. M2019-01453-COA-R3-CV, 2021 WL 754860, at *7–8 (Tenn. Ct. App. Feb. 26, 2021) (holding that the appellant's argument was waived where the appellant provided "only a skeletal argument actually addressing the very foundation of the trial court's ruling against her" and therefore had "not properly appealed the dispositive issue in this appeal"). For this Court to nevertheless discuss the merits of the trial court's grant of partial summary judgment would then require us to research and argue Appellant's case for him and essentially "act as [his] counsel[.]" **DiNovo**, 706 S.W.3d at 337; *see also* **Hessmer**, 138 S.W.3d at 904 (noting that "the courts cannot create claims or defenses for pro se litigants where none exist" (citing **Rampy v. ICI Acrylics, Inc.**, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994)). While pro se litigants are entitled to some leniency in the reading of their briefs, they are not allowed to shift the burden of litigating their cases onto the courts. **Chiozza**, 315 S.W.3d at 487; *see also* **Sneed v. Bd. of Prof. Resp. of S. Ct.**, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). We therefore decline to address this aspect of the trial court's ruling.

Appellant also takes issue with the trial court's failure to hear or grant his own motion for summary judgment filed October 24, 2023. However, there is no indication that Appellant ever set this motion for a hearing. *See* Shelby County Circuit Court Local Rule 5(b) ("All motions except those made during the actual trial of the case must be entered on the motion docket. Only those motions placed on the motion docket by the close of business on the preceding Friday will be heard."); *cf.* Tenn. R. App. P. 36(a) (directing that a party is not entitled to relief from an error of its own making). Nor does the record reflect that

Appellant raised the failure to directly address his motion at any point before the trial court.[17] *See **Powell v. Cmty. Health Sys., Inc.**,* 312 S.W.3d 496, 511 (Tenn. 2010) (noting that it is axiomatic that arguments may not be raised for the first time on appeal (citations omitted)). And, despite broaching the issue multiple times throughout his brief, Appellant offers no argument or citation to legal authority to support his contention that his motion for summary judgment should have been granted. *See **Heflin v. Iberiabank Corp.**,* 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018) ("It must be clear that a party has constructed an argument regarding his or her position on appeal; if not, the matter is subject to waiver." (citing **Newcomb**, 222 S.W.3d at 401)). Accordingly, this issue has also been waived.

## E. Confession of Judgment

Appellant's final substantive issue relates to the trial court granting Appellees' motion to confess judgment as to his breach of contract and negligence claims in the amount of $6,766.64. And Appellant argues throughout his brief that his right to a jury trial was violated. As discussed, *supra*, this argument is without merit in relation to Appellees' motion for partial summary judgment on the issue of punitive damages. We conclude that the same cannot be said in relation to Appellees' motion to confess judgment. Regrettably, Appellant's argument does not wholly comply with the briefing requirements, in failing to include legal citations for many of his assertions and offering only skeletal analysis when citations are made.

Still, Appellant's arguments concerning the confession of judgment share a common throughline: that a confession of judgment is not a proper procedural vehicle for Appellees to obtain the result that they desire in this case. *See **DiNovo**,* 706 S.W.3d at 336 (holding that Tennessee courts must "reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process"). Indeed, Appellant raised this argument in both the trial court and on appeal, giving Appellees ample opportunity to respond with authority in support of their claim for relief. *See **In re Aniyah W.**,* No. W2021-01369-COA-R3-PT, 2023 WL 2294084, at *5 (Tenn. Ct. App. Mar. 1, 2023) ("[T]he doctrine of waiver stems from a desire to maintain the fairness of the adjudicative process so that a party may not be faced with an argument that it did not have notice of and a meaningful opportunity to respond." (citing **State v. Bristol**, 654 S.W.3d 917, 924 (Tenn. 2022))). But Appellees have never cited a single rule, case, or statute that provides that they can resolve the claims in this case by simply confessing to a fraction of the damages that Appellant seeks. Appellant's arguments, underdeveloped as they may be, therefore did not "shift the burden of litigating [his] case to the courts," but simply asked that Appellees provide some support for their own requested relief. ***Chiozza***, 315 S.W.3d at 487.

---

[17] Of course, the ruling in the trial court's order granting Appellees' confession of judgment that all remaining issues were moot served as an adjudication of Appellant's motion.

Certainly, confessions of judgment are not unheard of in Tennessee. As Appellant readily admits, one type of confession of judgment recognized in Tennessee involves the collection of a debt. As this Court has explained,

> A judgment by confession, sometimes called a cognovit judgment or "judgment on warrant of attorney" is "a grant of authority by one contracting party to the other, upon the happening of a certain event, *i.e.*, a breach of the terms of the agreement wherein the warrant is contained, to enter . . . a judgment." 46 Am. Jur. 2d *Judgments* § 194 (Aug. 2020 update). A judgment by confession may be secured when a debtor has signed a cognovit note, which is a document or contractual clause by which he relinquishes the right to notice, a hearing, or appearance at an action to collect a judgment in the event of breach of contract. 46 Am. Jur. 2d *Judgments* § 201 (Aug. 2020 update). "The cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder." ***D. H. Overmyer Co. Inc., of Ohio v. Frick Co.***, 405 U.S. 174, 176, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972). Such a provision in a promissory note "cuts off every defense, except payment, which the maker of the note may have against enforcement of the note." 46 Am. Jur. 2d *Judgments* § 201 (Aug. 2020 update).

***Cap. Partners Network OT, Inc. v. TNG Contractors, LLC***, 622 S.W.3d 227, 235 (Tenn. Ct. App. 2020) (footnote omitted). The Tennessee General Assembly, however, has determined that a judgment by confession in this context "is only valid when made *after* an action is instituted and there has been service of process in the action." ***Id.*** (citing Tenn. Code Ann. § 25-2-101). "Thus, cognovit notes or clauses are void under Tennessee statute." ***Id.***

Another area where judgments by confession appear to be authorized is in general sessions court where general sessions courts are "vested with the power to . . . [e]nter up judgment by confession of a defendant to any amount within the judge's jurisdiction in the particular case[.]" Tenn. Code Ann. § 16-15-401(2). Tennessee law also provides that a defendant may confess judgment for fines and costs in a criminal matter. *See* Tenn. Code Ann. § 40-24-103.

Obviously, none of these are applicable here. Appellant is not a debtor to Appellees, and it is absurd to suggest that judgment by confession may be used against him in this action where he executed no cognovit note. Moreover, this case originated in circuit court, rather than general sessions court, making section 16-15-401(2) wholly inapplicable. And this is not a criminal matter where a fine has been assessed.

Simply put, Appellees have cited no law that permits a defendant to admit that they

are liable for a tiny fraction of a plaintiff's claimed damages, resolving the case as if that is all there is to it. Appellees may have valid concerns that Appellant's requested damages cannot be supported by the pleadings, the proof, and/or Tennessee law. However, a confession of judgment is not the proper way to challenge Appellant's claimed damages. Rather, the Tennessee Rules of Civil Procedure outline various procedural vehicles by which a defendant may obtain judgment in its favor prior to submission to the factfinder without the consent of the plaintiff, including judgment on the pleadings;[18] motion to dismiss;[19] and summary judgment.[20] Indeed, Appellees took advantage of the summary judgment procedure when they sought to dismiss Appellant's claim for punitive damages. But they chose not to utilize this procedural vehicle with regard to the remainder of Appellant's claims.

To be sure, Appellant's decision to withdraw and then attempt to renew his claim for loss of use complicates the matter. And in their motion to confess judgment, Appellees did provide legal authority for their assertion that Appellant was only entitled to the damages that they confessed to. In particular, they asserted that "the maximum recovery [Appellant] could expect to recover in this case under Tennessee law based upon his own documentation, repair estimate, and sworn testimony, assuming he properly admits said evidence at trial, is $6,766.64, the amount of his only secured repair estimate." Stated otherwise, Appellees' argument was that Appellant's evidence was insufficient to establish his claim for loss of use damages, and that as a matter of law, he was entitled to only the $6,766.64 cost to repaint his vehicle. Such a contention is more aptly suited to a motion for summary judgment. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (providing that one method by which a party not bearing the burden of proof at trial may establish its entitlement to judgment as a matter of law is "by demonstrating that the nonmoving party's evidence . . . is insufficient to establish the nonmoving party's claim or defense"). But we cannot conclude that Appellees' motion to confess judgment was a substitute for a properly filed and supported motion for summary judgment seeking to dismiss all claims for recovery other than the cost of repair.

Instead, Rule 56 details specific requirements that a party moving for summary judgment must follow. For example, Rule 56.03 provides that a motion for summary judgment "*shall* be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03 (emphasis added). The non-moving party then has the opportunity to dispute those facts, assert additional undisputed facts, and/or file an affidavit seeking additional discovery. *See Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 537 (Tenn. Ct. App. 2012) ("[Non-moving] parties may deflect a summary judgment motion challenging their ability to prove an essential element of their case by (1) pointing to evidence either overlooked or

---

[18] *See* Tenn. R. Civ. P. 12.03.
[19] *See* Tenn. R. Civ. P. 12.02.
[20] *See* Tenn. R. Civ. P. 56.04.

ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery." (citation and emphasis omitted)). It is error for a trial court to grant a motion for summary judgment when the non-moving party has not had a meaningful opportunity to respond. *Cf.* ***Craven v. Lawson***, 534 S.W.2d 653, 655 (Tenn. 1976) ("[W]here there is the slightest possibility that the party opposing the motion for summary judgment has been denied the opportunity to file affidavits, take discovery depositions or amend, by the disposition of a motion for summary judgment without a thirty (30) day interval following the filing of the motion, it will be necessary to remand the case to cure such error.").

Once the non-moving party has had adequate time to respond, the trial court is required to evaluate whether judgment should be granted as a matter of law and to state the legal grounds upon which the motion is granted or denied. *See* Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's ruling."); ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 313 (Tenn. 2014) (finding Rule 56.04 to be mandatory and explaining that "the litigants, the bench and bar, and the public expect [judges] to explain why a particular result is correct based on the applicable legal principles" (citation omitted)). In this case, however, we have doubt that the trial court employed the proper standard.

Importantly, the trial court's February 5, 2025 order does not provide a basis for its granting of the motion, stating only that the motion was "well taken and should be granted." The trial court therefore did not specifically address whether Appellant's claim for loss of use was properly before the court or whether Appellant's proof was insufficient to establish any damages beyond the Maaco estimate. *See* ***Smith***, 439 S.W.3d at 316 (noting that "reviewing courts have declined to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process"); ***Gooding v. Gooding***, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) ("While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" (quoting ***In re Est. of Oakley***, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *11 (Tenn. Ct. App. Feb. 10, 2015))).

We understand that litigating against self-represented individuals who are not familiar with the rules of our courts can pose different challenges than litigating against attorneys. However, that does not give represented parties the opportunity to attempt to use inapplicable legal devices to defeat a party's claims in the absence of the appropriate legal safeguards. By captioning their motion as a confession of judgment, Appellant's focus was understandably drawn to defending against the inapplicability of the motion, rather than

countering the legal and factual arguments contained therein. As a result, Appellant was not provided with a meaningful opportunity to respond to the substantive merits of Appellees' arguments concerning his entitlement to damages. *Cf. Seals v. State*, 23 S.W.3d 272, 277–78 (Tenn. 2000) ("[B]efore a state may terminate a claim . . . , due process requires that a potential litigant be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." (citation and internal quotation mark omitted)). Appellees obviously understand the procedural requirements of a proper motion for summary judgment, as evidenced by their filings opposing Appellant's claim for punitive damages. But despite Appellant's numerous objections, Appellees sought to unilaterally limit his compensatory damages award without affording him the necessary notice and procedural safeguards required by our rules of civil procedure. This they simply cannot do. We therefore reverse the trial court's order granting the motion to confess judgment. Appellees are free to make their arguments regarding the sufficiency of Appellant's proof in a properly supported motion for summary judgment on remand, if they so choose.[21]

## F. Frivolous Appeal

Finally, we address Appellees' request for frivolous appeal damages under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is frivolous when it 'has no reasonable chance of success' or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" *Stokes v. Stokes*, No. M2018-00174-COA-R3-CV, 2019 WL 1077263, at *10 (Tenn. Ct. App. Mar. 7, 2019) (quoting *Chiozza*, 315 S.W.3d at 493). In that vein, a "a party's failure to point to any evidence or rule of law entitling him or her to relief may be a basis for a court to conclude an appeal is frivolous." *Id.* (citing *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)). An award of appellate attorney's fees is within this Court's sole discretion, though the statute is meant to be applied sparingly "to avoid discouraging legitimate appeals." *Id.* (citing *Chiozza*, 315 S.W.3d at 493).

As discussed in detail above, several of the issues raised by Appellant on appeal stood no real chance of success, in large part due to his failure to properly brief and support

---

[21] Although Appellant waived review of the trial court's denial of his own motion for summary judgment, discussed *supra*, because we have reversed the dismissal of his claims upon the granting of the motion to confess judgment, Appellant is free to renew his motion or file a supplemental motion for summary judgment upon remand.

his arguments. However, based on Appellant's ultimate success in relation to the dispositive issue, we cannot deem this appeal frivolous. *See **Galloway v. Scott***, No. E2023-01666-COA-R3-CV, 2025 WL 294498, at *10 (Tenn. Ct. App. Jan. 24, 2025) (declining to award attorney's fees despite deficiencies in the pro se appellant's brief and the waiver of several theories for failure to raise them in the trial court because the dispositive issue was addressed). We therefore decline to exercise our discretion to award Appellees any damages related to this appeal.

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Jontae A. Fischiettie, and one-half to Appellees Econo Auto Painting of West Tennessee, Inc. and David Farmer, for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE